We're delighted to have a class from the West Point High School. It's a real pleasure to have you here and I want to thank you all for coming. We will begin our argument with the United States v. Chikvashvili. Mr. Ripke, let's hear from you. Good morning, Your Honors. May it please the Court. My name is Booth Ripke and it's my honor to be here today to represent Mr. Chikvashvili, the appellant in this case. I plan to spend most of my time today talking about the first two issues that we raised on appeal and brief for the Court. And the reason we focus on those two issues, obviously, because they both relate to Counts 2 and 3 in this case. And Count 2 and 3 was this entire case in terms of prejudice. We provided the extended quotes in the brief, I won't repeat them here, but from the District Court that if the Court agrees with us on either count that this evidence shouldn't have been before the jury, then the extremely unfair spillover prejudice from presenting this with a judge called 403 bombshell death evidence in what is otherwise just a civil trial would have required a mistrial as to all the counts. The first argument that I want to address today deals with the prong of the healthcare fraud statute that authorizes and powers the government to seek the possibility of a life sentence in prison for a white collar fraud if the fraud, the violation of the statute results in a death. That's a huge difference in our position that a judgment of acquittal should have been granted on Counts 2 and 3 because the statutory violation, the way that it was alleged in Counts 2 and 3 of the indictment, the conduct that was punished by those counts was not the conduct that the government alleged actually resulted in any death. The act that was alleged to violate the statute in Counts 2 and 3 was submitting bills to Medicare approximately three weeks or so after the patients died, not misreading the x-rays, which is the theory the government presented to the jury. Those misreads were actually charged as a different violation, as violating Counts 24 and 25, which is false statements in a healthcare matter. The crux of our argument, Your Honors, is that this is not a felony murder statute. It's not sufficient to allege that a death occurred as a result of an act in furtherance of the fraud. Instead, you have to actually connect that the death has to be caused by the execution of the scheme or the violation of the scheme. And it's clear from the way the government pledged it, and it's at pages 625 and 627. The whole issue pivots on the question of causation, does it not? That's right, Your Honor. In causation, did they prove that the death was caused by what they alleged to violate the statute? In this case, the submission of the bill. And the submission, the violation of the statute was the submission of the claims. The way the government pled it, yes, exactly. And they only allege the misreading x-rays, or having the person read those x-rays incorrectly, was an act in furtherance of the scheme. Which we acknowledge, they presented that evidence, and at this point we assume it to be true for the purposes of this claim. The fraudulent scheme, that you have to take it as a whole, that they had a non-trained radiologist, a non-trained nurse, looking at an x-ray that a radiologist should have been, a trained radiologist should have been looking at. And as a result, and then it was submitted as if a trained radiologist had looked at it, when that was not the case. So it's impossible to look at the scheme, it's a continuous scheme here. And that was what arguably caused the death of these two patients. I agree with the court that we do look at the scheme as a whole. But if we're looking to enhance the penalty to life in prison, then the violation has, and what we're asking the court to do is interpret the health care fraud statute in the same way as this court interpreted the bank fraud statute. In the same way as every circuit, the 5th and the 9th that have addressed this before have. And what the court said in Colton, which is when the court addressed this in the bank fraud context, that the statute authorizes prosecution for the execution of the scheme, not each act in furtherance of the scheme. So while you do look at the scheme as a whole, and acts in furtherance of the scheme matter in terms of proof, in order, all the statute criminalizes is the execution. And this is an interpretation that favors the government, because it allows them to charge one scheme 10 or 20 or 30 times, depending on how they define the execution of the scheme. That's the way they've been doing the mail fraud and wire fraud statutes forever. Your Honor's correct. That's a material distinction, though. In mail and wire fraud, you are allowed to charge acts in furtherance of the scheme, and the government did that in this case. An act in furtherance of the scheme does violate mail and wire fraud. It doesn't violate the healthcare fraud statute. And that's really the crux of the entire argument, that the execution of the scheme is the violation of the statute. The government has the power to define the execution as they want to, and the government has successfully done this. We provided at least four published appellate decisions in healthcare fraud cases where they alleged resulting in death, Merrill and Schneider and Webb and Martinez, which were situations where they alleged that there was a fraudulent prescription. The fraudulent prescription was submitted for financial reimbursement. The fraudulent prescription was also used to obtain drugs that the person overdosed on. And so the conduct, and we did cite in our materials the exact pages from the indictments in those cases, the government was able to do it. Execution of the scheme, execution of the scheme was submitting the prescription, which allowed both those things to happen. And that's the error the government made in this case. Well, I'm wondering how far your argument goes, because if we take your view of it, the act itself, the fraudulent act itself, would never cause death under the statute. Because you say that the causation question purely relates to the submission of the claim. But the submission of the claim could never cause a loss of life, could it? It would be the underlying act that caused the loss of life, and the submission of the claim followed from that. That's why I asked about taking the scheme as a whole. But the submission of the claim, if that's got to be the causative agent, paperwork is never going to be the causative agent. It's got to be the act, the fraudulent act that led to the submission of the claim, doesn't it? Well, in this case, that's why the government should have written this indictment differently. They shouldn't have written it to say, if they wanted to do this, the execution equals the submission of the claim. They should have defined the fraud differently, and the execution of the scheme could have been another act. And that's what caused it. And so the paperwork in this case could never do it. The paperwork in another case, in other cases, could. I think the government got into it. How would simple paperwork be the cause of death? Well, in the prescription context. The prescription's written on a piece of paper. It's submitted for billing, and it's used to obtain the medications. But here was a false reading on an x-ray. There was. And obviously for this argument. Well, how did you want them to charge it? You better also have them charge it the way we did, and then you get to come down here and argue about it. It's not good. You don't want them to charge it the better way, or you say there's a better way. Our job – I understand the question, Your Honor, and not to avoid it. I mean, our job is to respond to the charge of case. Well, you responded to it, and Judge Bedard didn't agree with you. That's correct. They got a huge benefit from charging it this way, too, because they charged 14 counts, 14 different counts. It could have gotten to multiples of 140 years on all the same scheme just because they decided to charge it by the execution. Which opened up a lot of evidence. Yeah. So it's a strategic decision the government makes. It's a power they have. And if they make it the wrong way, it's our obligation to put it out. Well, they got a responsibility to charge it right. You're saying they didn't charge it right. That's correct. And that's what the judge disagreed with you, and that's what we're here to do. That's right, Your Honor. There may be more than one way to charge it correctly. Yes. Yes. I'm not suggesting that if it's sent back that they can't figure out how to do it a different way, but they did. You mentioned the Webb cases, which is one of the so-called ill-milled cases along with Schneider. In both of those cases, it does seem as though they refer to an entire scheme to defraud. In the cases there, you have an unlawful prescription. You have a false claim for payment or prescription. And then you have an individual dying as a result of consuming that prescribed medication. I'll read it sort of simply here. Here we've got a case that doesn't look like it's much different, but you tell me how it is, in which you've got two improperly read X-rays, two fraudulent claims for payment submitted on the basis of those X-rays, and two individuals dying as a result of those improperly read X-rays. What's the difference? The difference here, among many of them, is that it didn't, for convictions on Count 2 and 3, it didn't matter if, as elements of the crime, if the X-ray was read correctly or incorrectly. It wasn't an element of the crime. The difference is that in the pill-milled cases, which Your Honor correctly cites, they do talk about a scheme. And I agree a scheme's important. It's one of the ways you prove fraud in these cases. But ultimately those cases are found on the same principle as the Fifth Circuit did and the Ninth Circuit did and all the circuits have in bank fraud context, that that statute criminalizes the execution of the scheme. And we're talking about a situation where you take a 10-year maximum and you turn it into the possibility of life in prison. Well, what I'm suggesting to you is that the words, the execution of the scheme to defraud any health care benefit program, that isn't just confined to a wrongful prescription. The execution of the scheme, it encompasses part of what executing the scheme to defraud the health care benefit program, part of what that involved was having nurses reading X-rays that should have been read by a trained radiologist. And that was essential to the whole scheme. I mean, that preceded the submission of the claim. That's what made the submission of the claim fraudulent. And if we try to chop it up and say, no, the only thing that counts here is the actual paperwork and submission of the claim, doesn't that constrict the language of the statute to the degree that the text of the statute doesn't permit? No, Your Honor. We're not the ones, the court's not the ones constricting that. The government is the one constricting that. When they wrote that the scheme was on about May 7th, when the bill was submitted, that's when the scheme was executed. That's the violation. So they're the ones that defined it this way, not us. They're billing for an X-ray that was fraudulent. That's correct, Your Honor. And to execute the scheme, they want to get the money for it. They want to get paid for something they didn't do right. Well, that's what they do want to get paid for, I agree. And what they didn't do right caused somebody to die. The facts of the case are horrible. But that doesn't give the government the right to have leeway in how they plead it. But getting back to what you worry about on charging decisions are whether the indictment ambushes you or catches you by surprise or exposes you to double jeopardy or something. But in this instance, didn't you know that a big part of the fight was going to be over causation? Yes, and that's why they moved the trial to the Supreme Court. There wasn't any surprise there, was there? Why wasn't the question of whether the execution of the scheme, it doesn't just say the scheme, it says the execution of the scheme, which is everything. But I don't understand why this whole thing doesn't come down to a jury question over whether this simple proposition is true or not. Did the execution of the scheme cause resulting death? That's the question to be posed by the jury. And I'm not sure that that isn't a factual question as opposed to a legal question. A lot of times people try to turn things into questions of law. But the question really is factual. Did the execution of this whole scheme result in the death of these two patients? I agree with Your Honor all the way except for what that word, execution of the scheme, means, because it's defined by the government in the indictment. So that's what we are up against. And so, yes, that's the decision. Does the execution seem plausible? The indictment means the narrative portions of the indictment as well. We read indictments as a whole. Well, that's correct, Your Honor. And part of the narrative portion of the indictment puts you on notice about what the whole trial was about. There's no question that notice was provided as to what the trial was about. But if the government... That's the big deal about indictments. Part of the thing about an indictment is we want to let people know what they're up against. And didn't this indictment let you know what you were up against? Well, I agree with Your Honor. But look at, this is a life possible prison, look at death cases. If they allege an element to get an enhancement and the element is not a valid element, whether I'm on notice about it or not doesn't matter because it's not valid. I don't know. It seems to me what Congress wrote this statute for didn't like health care fraud, we realize that. And what it really didn't like was health care fraud that got so sloppy that patients' lives were put at risk about it. Now, there was an expert testimony here that these two patients could have been saved. Their lives could have been saved if this individual had not engaged in this kind of fraud. And the physicians engaging in a health care fraud scheme have got to take into account the fact that a certain quantum of sloppiness is going to put people's lives at risk. That's what Congress was after. And, you know, if we want to eviscerate that intent through, you know, a highly, highly technical view of the statute, I'm not sure that we're not undermining the whole reason for this provision. That's my problem. If you think about that, you've got some time for rebuttal. I will think about it. I appreciate that, Your Honor. My position is that I don't think when the Fifth Circuit and Ninth Circuit addressed these that they eviscerated it. But I do understand the point of the question. I'll be glad to address it further during rebuttal. Okay. May it please the Court, Assistant United States Attorney Leo Wise on behalf of the United States, I want to start by picking up on a question you asked, Judge Winn, about Webb, one of the cases the appellant cites provingly in their brief. Quite simply, this case is charged identically to Webb. And they have said Webb survives appellate scrutiny and, therefore, this case applies, survives appellate scrutiny. Which circuit was that in? That was in the Fifth Circuit. The charging language in that case, which they don't quote in their brief, but in footnote 13, they reference. But when you look at that, it is precisely the same charging language, and this is at page 18 of that indictment, as was used in this case. I heard Mr. Ripke say a moment ago that the date of counts two and three, which is the date of the claim, somehow supports their argument that the execution is limited to the filing of a claim. Well, in Webb, they also use the date of the claim for each of their executions. However, of course, as the appellant concedes, the execution in Webb, just like the execution in this case, as charged by the grand jury and as found by the pettit jury, includes more than simply the filing of a claim with Medicare. Because as Judge Wilkinson, as Your Honor has pointed out, no one ever died from a paper cut. And if Congress wanted to enhance penalties for health care fraud that resulted in death, applying the highest level of causation, which is what's present here, then if the court were to adopt the appellant's argument, that statute would be unprovable. It would be utterly unprovable. In this case, the court should affirm the defendant's convictions as to count two and three because the jury was presented with overwhelming evidence that the defendant committed health care fraud resulting in death when? And this is the key. This is how the execution was defined in the indictment and how it was presented to the jury and how the district court instructed the jury. When first the defendant directed his non-physician employees to attempt to interpret x-rays and then prepare phony doctor's reports as if real doctors had done that. Two, when those phony reports were then given to the nursing homes where in the case of counts two and three, MVK in count two and DMC in count three lived. And then finally, in the case of counts two and three where the defendant sought reimbursement from Medicare in the amount of $8.87 for MVK. That's how much money he was able to steal from Medicare because he had his employees prepare this report rather than a doctor. How much money was added in? $8.87, Your Honor. And $218.36 in the case of DMC. At trial, medical expert testimony was presented that in both cases, those victims were experiencing congestive heart failure. That that congestive heart failure was visible on the x-ray to the trained eye of a radiologist. But that because these x-rays were given to untrained x-ray techs, that health care decisions were then made on the basis of those misreads and that those patients died. The defendants lawyer said you didn't charge with the right for medicine. You charged with submission. That's all that's here. That alone cannot be a nexus to death. That simply ignores the language in the indictment. And it ignores the instruction the court gave to the jury. The statute criminalizes defrauding Medicare, and this is the key language, in connection with the delivery of health care benefits. Is this indictment, the form of this indictment, used generally around the country? Yes, Your Honor. In the fraud section up in the criminal division, that are supposed to be specialists as well as you, is that the type of indictment that they've studied on and sort of promulgated for the Justice Department? Came right from them, Your Honor. And this was a multi-, multi-page speaking indictment that, to Your Honor's point, clearly put the defendant on notice that the execution of the scheme in this case. And that's what an indictment's all about. That's right. There's a given, there's a national charge, but it has to allege the elements. But it needs to give the defendant notice so he can defend. And even if it's not sufficient, you can get a bill of particulars. And that's, you know, that's what there's an air of unreality to this argument, because this was a hard-fought case, pretrial and at trial. And the whole issue was over these misread x-rays and whether having an x-ray tech attempt to read an x-ray and submit a claim to Medicare for it was what was going on at this company, or whether, as the defendant claimed, he had no idea this was going on and it was being done essentially by rogue employees. In both of these instances, wasn't it true that the actual submission of the claims occurred after the deaths of the patients? That's right. And the same thing occurred in... I take it if they had never submitted those claims, would there be a health fraud? No. And this is where there was... So you're saying that the actual crime occurred after the death of the individuals, because apparently you're telling me there was no crime until they submitted it. That's right, Your Honor. And I say that because, and the defendant, the appellant in his reply brief, incorrectly states that in the pill mill cases, writing the prescriptions is a, they use the word predicate, a stand-alone predicate violation of 1347. That's absolutely not true. What gives the federal government jurisdiction to criminalize this conduct is the submission of the claims to Medicare. The execution is not limited to that, but it is the essential jurisdictional trigger. Writing a prescription is regulated by state medical practice. That does have some oddity to it when you think about it. You just said to me that if these had never been submitted, the submissions happened after the death, there would have been no crime. That's right, Your Honor. Doesn't it sound odd that you can, unless there is, I guess maybe, if the very act that you're saying caused the death or happens after the death, or at least the charge for it is made after the person dies, but you couldn't do it if they never do this additional act. You would not have a federal crime. You might have a state manslaughter charge or a civil malpractice claim. So is this a jurisdictional element? It is. That they bill it to Medicare. That they bill it to Medicare. Just like in the mail and wire fraud statute that they use the interstate wiring system. The resulting in death, though, is a penalty enhancement. Exactly.  Exactly. If you could have the fraud conviction without the resulting in death. That's right. And in this case, there were counts that have not been challenged of health care fraud where it was not alleged that death resulted. But the resulting in death are in counts two and three, and that's why you need to focus on those because they've got that life sentence. There are a lot of federal statutes that are written with jurisdictional elements in them to get it to be something that is across state lines or utilization of weapons and things across state lines. So jurisdictional elements are really common. And then you also, it's very common to have graduated penalties depending upon severity.  Are you armed or are you not armed? Does the robbery result in injury or does it not? Does the robbery result in death or does it not? But the jurisdictional element is the fact that it's a federally insured bank or what have you. And then you have the graduated penalties. So that seems to me a fairly straightforward paradigm of a federal criminal statute. And I think that's kind of what we have here. I agree, Your Honor. And I think it's also meant, to your question, Judge, to protect the Medicare program, just like mail fraud is meant to protect the public. I follow you entirely, and I agree wholly with what Judge Wilkinson just said. I'm just thinking, give me a case, though, in which maybe you just can help me out, in which the actual, everything, the crime is already consummated, it's done to the extent that it's there. And then, but you can't charge it federally unless they do something, after everything that's already been done has been done. The bank's already been robbed. You didn't go out of state. You didn't do anything except, you know, you're dealing with a whole different thing than banks, because by definition you're dealing with banks. Right. But here you've got the death of the person has occurred, and you can't charge him federally. He waits a year, how long you can take him, how long you can take to submit one of his claims, and then submit it, then it's a federal crime. I'll give you an example, I think. But if the answer goes to the whole scheme of it, that it's a continuing, I can kind of feel that. I'm not saying this is not the way it would go, but I'm just trying to understand, is there another example like this in any other area of the law? I'd give you an example using the mail fraud statute. If I hatched a scheme to defraud you to get you to give me $20,000, and I did it because we were friends and I knew you and I talked to you in person and met you at your office and you gave me the money, and then I then packaged it up and put it in an envelope and mailed it. It's the act of mailing that would make that mail fraud. The difference there is you're concerned with the act, the mail fraud itself, his death. You're not packaging the death to do anything with the person's deed. You're saying everything that's wrong here has already occurred. But it occurred just like in the case of me getting that money from you before I mailed it. The death occurred before this claim was filed. It is the filing of the claim that triggers federal jurisdiction because the execution has multiple components. Having the techs try to read the x-ray and prepare the report is one component. Sending that x-ray to the nursing home so they think they've actually gotten the service and don't call up Medicare and complain is another component. And then submitting the claim is a third component. Because this is an attempt statute, the crime is complete when they submit the claim. But that is not the sole execution. And if it's paid, the crime is then successful. Distinguish those two cases from the Fifth, Ninth Circuit, Hickman, and I guess it's the Pollock case that you're going to talk about. I think they absolutely support the way in which we charge this case. Colton, one of the cases they charge, I think is particularly important. That's the one Mr. Ripkey mentioned. Colton says that when an act is, quote, chronologically and substantively independent from other acts charged in the scheme, it constitutes an execution. So thinking about what we have here, every time one of these techs goes to a nursing home and they take an x-ray and then they try to interpret it and prepare one of these reports, those are chronologically and substantively independent from one another.  Counts two and three are just two examples. But it was presented to the jury that this happened on thousands of occasions. Now, there was also evidence by contrast of acts in furtherance, and we recognize that distinction. For example, an act in furtherance of the scheme was, and this is described in the summary of our facts in our brief, the CEO defendant, to deceive his chief financial officer, ran his personal expenses through the business, and dressed them up like he was paying physicians to interpret x-rays. Because if you're getting this much, if you're getting a million dollars in Medicare reimbursement and you're not paying any doctors, the books won't balance, and the CFO will catch wind of that. So to hide that, he told the CFO, well, all these bills are from doctors, and they were really bills for his personal expenses. That was an act in furtherance. But when they go out and take an x-ray and don't give it to a doctor and prepare one of these phony reports and give it to the nursing home and then tell Medicare, we hired a doctor to write this report, pay us, that is an execution of the scheme. And it happened again and again and again. And two and three are just two examples of that. There are other examples of that in the health care fraud. And the fact that it's $8 in that one instance really doesn't make any difference. Give it $800,000. That's right. It's the same crime. That's right. So what interests me is trying to make a question of law out of it where there are all sorts of technical parsing and everything. But the way I read the statute is that it encourages the submission of a very straightforward, factual question to a jury that did the execution of this scheme, execution of the scheme, taken as a whole. There's no evidence in the language of the statute that the scheme would be divided and sub-partitioned. But did the execution of this scheme in its totality cause death? And that was going to be put before the jury as a straightforward question, factual question of causation. And the defendant knew it. And, you know, he was fighting alternately on willful blindness or whether he was even aware of this. And then he started fighting on causation. And so he was switching not, I mean, that's fine, depending on whether the ignorance of the whole thing or whether the causation stood him to gain his best chance of success. But it's factual at bottom. It's a jury question at bottom. And that's true whether it's a question of mens re. That's going to be a jury question. Or, you know, whether it's a question of causation. But they're factual. Are they not? They're jury questions. They are, Your Honor. And these were hard-fought factual questions. And this issue was never raised. It wasn't raised at the Rule 29. It wasn't raised pretrial. There was never a motion to dismiss these two counts because they failed to state it. Were you saying it's up here on plain error? Well, they're arguing, because the standard review is de novo for Rule 29, that even though this argument was never made, that it can be considered by the court now. But, as I said, there's an air of unreality to it. I was trial counsel in this case, and I was trial counsel pretrial. We fought tooth and nail over this. And to now say, well, the government actually just charged him with submitting claims to Medicare. And so the whole trial was mostly irrelevant evidence, and it didn't occur to anyone that that was all relevant. Did you get a chance to go after your expert, Arne? Absolutely. We had a two-day Daubert hearing, and Judge Bredaert found we had, in the superseding indictment, the reason this is the second superseding indictment, we had charged four deaths. And Judge Bredaert found that, under Daubert, the expert's testimony was not sufficiently conclusive that the misread x-rays were the but-for cause of two of the deaths. When the expert took the stand, there wasn't any curtailment of cross-examination or whatever, because a lot of it was fought over the expert testimony here on the question of causation. That's one of the positions. And I want to make sure that he had the chance to go after that expert to his heart's content. As fully as... yeah, there was no curtailment, and the expert had been on the stand for two days pre-trial, so they had a full... what you usually don't have, they had a full preview of what... How long was the expert on the stand? The better part of... I think it was at least a day and into a second day. And there were two experts, both of which they had the ability to cross, a radiologist and then an expert in intensive care who opined as to the death and the death causes. You had two experts at least that were pretty much pointed. Two different patients here, one DMC. It seems pretty clear that the one for DMC, the physician testified that he would not have authorized the physician but for the inaccurate x-ray. That's right. The other physician, let me know in terms of where this but-for comes from because he seems to indicate that it was standard practice to transfer this patient. He didn't say that but-for, the misread x-ray, he would have removed the person. Is that a sufficiency issue? So the two cases present different causal chains. In the case of DMC, as Your Honor has identified, she was cleared for surgery based on the phony x-ray report, and her treating physician said, I got the report, not the x-ray, and this is an important point, and I read the report and it said no CHF, so I cleared her for surgery. I think she's clear in that case. It says but-for. Right. The other case that seems to be of some concern because he's saying the standard practice would be different. It seems to be materially different than but-for this. I would have done it. So what the medical expert said is that MVK was not transferred because the phony x-ray report said no CHF, and that if she had been transferred, she would have been treated, and that the treatments were highly effective. And so but-for the misread x-ray, she would have been transferred and treated. Instead, she stayed in the nursing home, lingered, and died. So they present two different causal scenarios, but in both cases, the medical expert said, under standard medical practice, for DMC, she wouldn't have been cleared for surgery, and he was corroborated by her treating physician because that was an active decision. And then in the case of MVK, he said, under standard medical practice, but-for the misread x-ray, she would have been transferred to an acute care facility. Since that never happened, there was no one we could call to say what happened when she got there. She was left to die in the nursing home because her congestive heart failure went untreated. But the expert testimony was the treatments for congestive heart failure are highly effective and would have saved her, which is the standard under but-for is would the patient have died when they died, not will they ever die. Was it ever foreseeable to the physician that these patients would die, and does it matter? It doesn't matter, but we think it was. I mean, the typical health care fraud case is a- Does it have to be foreseeable? I mean, is this-normally a men's ray in this kind of statute would be knowingly cause the death. Right. But you don't have that kind of classic men's ray knowingly cause the death. Right. It's rather-the element here is a non-men's ray element in the sense that the men's ray, the knowing and willful action, is that of the fraud. You knowingly submit the false claim, so that's the men's ray part. Right. But the death is not a men's ray. You don't have to knowingly cause the death or even that death is foreseeable. Does that make a difference? So the elements do not require that the death be foreseeable, but in this case evidence was presented that unlike a typical health care fraud case, which is just a billing case, the defendant was denying health care to people that needed it, incredibly vulnerable victims with multiple- So what I'm saying, what I'm asking you is are we convicting someone on a negligence basis, that knowingly submitting the false claim, fine, but resulting in death, that's more of a result of negligence. It's actually- Are we watering down men's ray in a situation where a classic men's ray element such as knowing and willful doesn't need to be approved beyond a reasonable doubt, but just the fact of but-for causation? Your Honor, it's actually a strict liability standard. It's the fact of but-for causation that exposes the defendant to the enhanced penalty. But the facts in this case were not a felony murder-type theory. A felony murder-type theory would have been if the tech on the way to the nursing home ran someone over. That would be a felony murder-type theory of prosecution. Here there was actually a strong causal connection between what was missed on the x-ray and what the patient eventually died from. But does the strict liability aspect of the scheme present a problem? I don't believe so, Your Honor. I mean, this is one of the rare criminal cases where the Congress sought to entertain. This is not a mandatory minimum like in the drug overdose context. But to give the trial court the discretion based on all the facts to entertain an enhanced sentence. And in this case, we think the facts were egregious and justified the sentence that was ultimately given. All right, thank you. Thank you, Your Honor. Good morning again, Your Honors. Judge Nguyen, I want to respond specifically to the question you were asking the government. Because I know inadvertently and accidentally, but the government said something that was absolutely incorrect. And it's material to this whole thing. Misreading the x-ray alone is a crime. It is a federal crime. And it doesn't matter if they submitted the bill or not. They charged it as a federal crime in this case in counts 24 and 25. And they got convictions for it. And the judge could absolutely have considered whether somebody died or not as relevant conduct at sentencing. It is a crime to write a report and make false medical statements. It's a federal crime. So they didn't need anything about billing in order to convict somebody in federal court or jurisdictionally to get them in federal court. They had that in all these other counts. They wanted this one special one. They wanted an enhancement of the possibility of life in prison. And it is correct what Your Honor is saying. It is a unique scenario that allows somebody to be exposed to this on what is essentially a negligence basis. And that's why it is important to make sure that if you're going to go for that, then the execution you allege is that that behavior is what does it. And what the government said, respectfully I know, it was inadvertent, but that's not how it was charged in Webb. I have the indictment in Webb here. And I have the indictment in another one of them here. It's not a form that's used in every single situation. They break it out, manner and means, and execution of the scheme. And execution of the scheme was filling prescriptions. And execution of the scheme was filling prescriptions. It is a filing of the paperwork in that case that caused the death in those situations. When the government is telling you that's a component and that's a component and that's a component, what they're telling you is that's the manner and means by which the conspiracy was done. Yes, it's relevant to talk about that. Yes, it's important conduct. Yes, it's the reason you get hammered at sentencing. But it's not an execution of the scheme. But I'm not sure I can go so far as to say that Congress could not write a statute this way because the legislative branch has the ability to determine what are the elements of crimes and what are sentencing factors. Okay, the elements of the crime would include the mens re, and that's the knowingly submitting the fraudulent claim. Now, the result in is sort of, it's an element in one sense, but it's a sentencing factor in another sense. And it allows a district judge discretion in sentencing if a fact is found by a jury. Now, Congress could have made it a pure sentencing factor and left it entirely. But what it did was it took the extra step and wanted a jury finding. And that seems to me fair enough. It could have said that, okay, it's a sentencing factor. Let the judge find it by predominance of the evidence or whatever. It could have all been folded into a guidelines scheme. But isn't it more protective of a defendant's rights if something Congress could have designated as a sentencing factor is actually posed as a fact for a jury to find? I mean, I thought that's what we were all after in Apprendi and associated cases. And here Congress did that because the alternative is to leave something like that to a preponderance standard. And so why should Congress be penalized for putting it under a reasonable doubt? Well, I agree with Your Honor. It is an element. I agree that making it an element is more protective of a defendant. And below, in the district court, the government conceded under Apprendi that this is an element that they have to prove. If it wasn't an element, if it was just a sentencing factor, we wouldn't be able to make the argument we're making today. But because it's an element, it has to be pled and proven correctly. And it wasn't in this case, and that's why Congress 2 and 3 should have been. Well, that gets back to the factual question and the whole matter of the expert and whether there was sufficient question of causation that allowed a jury to find result in death beyond a reasonable doubt. In other words, I'm still hard pressed to find in this whole case any sacrifice of a defendant's rights here because you got notice about, you knew that it was going to be first a question of willful blindness and then it was going to be a question of did he know about the scheme and then there was going to be the question of causation. You weren't surprised by that. This had to be proven beyond a reasonable doubt. It doesn't seem to me that the defendant's rights were sacrificed either in knowing what he faced or in having to prove the result in by a reasonable doubt, beyond a reasonable doubt rather than a preponderance. So that's the question at the bottom line was, were somebody's rights actually sacrificed in an unconstitutional sense? And I'm not sure I see that. I understand, Your Honor. I submit that they were because he was convicted on counts 2 and 3 for conduct that was not charged and which could not expose him to a life sentence because as the government admits, in this case it was impossible to prove that submitting the bill could have caused any death. Now that gets back to the whole question of whether we should read this statute to charge a scheme as a whole or just a little bit of the tail end of the scheme. I understand, Your Honor. I submit that the rights were violated in the sense that it was at the root of Judge Wynn's question about how does this make sense, what you're claiming. And it doesn't make sense in this case. The fact that they could have done it another way and possibly could have gotten this done successfully by pleading it a different way is not a justification to allow this version to stand. Okay. Thank you very much, Your Honor. All right. Thank you all. Come down and say hi to everybody and then let's move into that next case.
judges: J. Harvie Wilkinson III, Robert B. King, James A. Wynn, Jr.